Haynes, J.
This petition is filed for the purpose of reversing the judgment of the court of common pleas, and to set aside a verdict, in a case wherein Bradshaw was the plaintiff and the railroad company the defendant. A demurrer was interposed to the petition, which was overruled, and an answer was filed, and the case came on for trial, and during the trial numerous exceptions were taken to the action of the court. A verdict being returned in favor of the plaintiff below, a motion was made for a new trial, which was overruled, and *646 exception is taken to that. 'The evidence is embodied in a bill of.exceptions, and brought before us in that manner.
It is claimed that the petition did not set out sufficient facts to eonsitute a cause of action, and that the demurrer should have been sustained. The petition is not very closely drawn; but suffice it to say, we think the court did not err ■in overruling the demurrer.
The real test of the case comes upon the evidence of the plaintiff himself, and the question as to whether there is in fact a cause of action against the defendant below, the railway company; and that has occupied our time and attention quite closely.
It appears that Bradshaw was a brakeman upon the train of the defendant company, and that on a certain day he ran with his train from Lima to Deshler as a regular train, and then it started back as an extra. They proceeded south until they arrived at. Leipsic Junction, and at that point they were to take cars upon the train for the purpose of hauling them south. There are several tracks connected at that point, and there are also switches, or side tracks, or curves whereby the respective roads are enabled to take their cars from one road to the other; that is to say, from the C. H. & D. to what is called the Nickel Plate, and vice versa. A car had been brought north in some train of the defendant company, and had been set off on a side track to be delivered to the Nickel Plate; or, as some of the witnesses said, was billed to the Nickel Plate. It stood at any rate upon the side-track of the defendant company for a little time, and then was taken out and put in upon another side track of the company. In running the train upon wffiick the plaintiff below7 was employed in upon this side track, which they did, it became necessary to attach to it certain cars, including this car which had thus been set in, and the attachment was.madeto that car with four or five others, and the engineer started *647 with his locomotive to take the car forward. The train parted at this precise car, wilich was soon discovered by the rear brakeman, who signalled to the plaintiff below, and he signalled to the engineer to back np. It was Bradshaw’s duty to attempt to couple that car again, and ns the car slowed up,he approached the car that -was standing upon the track, and. according to his testimony — which is given in various forms on direct and cross-examination, and at consid-' erable length — as he approached the car he saw that the pin was in the drawbar. He went up to the drawbar and took the pin out, and placed it in its proper position for making the coupling. As the car on the approaching train was being backed up and came near,he stooped down, took hold of the link, and attempted to guide it into the drawbar. About that time he discovered that a portion' of the draw-bar was gone — broken off, indeed, quite, a large portion of the under part of the drawbar was gone, and the absence of that portion of the drawbar, evidently, was what had caused the train to break asunder or pull apart. The plaintiff guided the link into the drawbar, and at that moment noticed thé broken drawbar and being fearful, as he states, that he would receive an injury, the moment he guided the link into the drawbar,he dropped his hand down, and as the parts of the train were coming together, he started back, fearing that there was some other defect from which he might receive an injury, as he states. He started suddenly and quickly, and as he did so, his hand was caught between the deadwoods of the two cars, and a portion of the hand was taken off. He says that he dropped his hand in about the same manner that lie would if the drawbar had been whole and the link had gone into it, but he claims that he raised up or started back quickly, under the influence, of some excitement and some fear that in the condition of the car it was probable there was some other defect in it, and he was in danger of being injured. That is substantially his testimony.
*648 It is contended very strongly here on behalf of the plaintiff in error that there was no actionable negligence on the part of the railway company; and it is contended that the break inthe drawbar was not the immediate cause of the injury to the plaintiff below. That is very earnestly and ably argued by counsel for plaintiff in error. The liability of the railway company really turns upon this question. While it is denied that there was any negligence on the part of the company in regard to the drawbar, and while it is claimed that the car had been carefully inspected by the proper agents or inspectors of the railway company, still, we think the evidence tends to show negligence on the part of the company. The evidence certainly tends to show that when this car was put in upon the other tracks a day or two before, it was inspected by the chief inspector or one of the inspectors at that point. The testimony tends to show that the car was inspected by the chief inspector where it was set in upon the other track where it was found, and that he made the inspection within a short time prior to the accident; yet there is testimony tending to show that the broken pieces of the drawbar were found soon after the accident, lying where the car had stood a day or two before, indicating that the car had been broken at that point, perhaps, after the inspection as made upon that side track, and that it was brought around with a broken drawbar to the track where the accident happened, and that the inspection that was made by the inspector upon the afternoon or a short time previous to the accident was not a thorough and proper inspection; that while the inspector testifies that he made the inspection, and that the car was in sound condition, yet that the drawbar was in fact broken, and had been broken twenty four hours previously. We think, therefore, that the jury were warranted in finding that there was negligence on the part of the company through its officers and agents in inspecting the car.
*649 It is claimed that the plaintiff was guilty of contributory negligence. (I speak of that before coming to the main question again, and partly in connection with it.) It was claimed that he should have seen the condition of that draw-bar when he went in to make the coupling, and that if he did not see it, it was negligence on his part that he did not, because he might have seen it, if he had used reasonable care and caution in looking, when he went in to make the coup•ling.
The cars belonging to the Delaware and Lackawanna Co,, and the evidence shows that they had double deadwoods. These deadwoods are very large — I suppose from eighteen inches to two feet through in one way, and six inches the other. They are formed on each side of the drawbar, and are made for its protection, as it was testified here, and made for use in a hilly country, where the cars are expected to go up and down steep grades and around sharp curves. It is claimed on behalf of the plaintiff below that he could not have seen by an ordinary observation the condition of the drawbar, and it was not practicable, in the ordinary course of his business and in the use of reasonable caution, for him to see it, until he had stooped down for the purpose of insertng the link, and then it was manifest to him that the drawbar was broken. It is in testimony that he went in between the cars in the ordinary way. He passed in, placed his hand up towards the stationary car,- drew up the pin and fixed it as the other car was approaching. As it approached, he had hold of the link. This is said to be the usual and ordinary way of coupling cars. Then he stooped down for the purpose of guiding the link into the drawbar, and then discovered the broken drawbar. The jury, of course, found that he was not guilty of any contributory negligence in that respect; and we do not see anything in the testimony that should lead us to disturb the verdict for that reason.
The main,- real, and in fact the only question in the case *650 is whether or no he was guilty of any negligence or carelessness when he arose, having his hand caught,and whether the broken drawbar was the direct cause of the accident. The •point made by counsel for the railway company is, both as to the petition and as to the testimony, that the broken drawbar was not the. direct and natural cause of the injury, He sys:
‘‘But it is just as true that, although the defendant failed to perform its duty in this regard it would not be liable to' the plaintiff for the injuries he sustained, unless its failure to perform that duty is the proximate cause thereof. That is to say, that unless it clearly appears from the allegations of the petition, that ‘that which, in a natural and continuous sequence, unbroken by any new cause, produced the injury, and without which the injury would not have occurred,’ was the defective drawbar, the defendant is not liable.”
Now, we suppose it is true, that if the plaintiff, upon discovering this defect was, as he says, frightened — was disturbed or was excited — and that resulting from that excitement he so conducted himself that he received the injury; that the fact that the excitement was caused by the broken drawbar and his observation of it would in law make the broken drawbar the proximate cause of his injury. It is true that his hand was not injured at the time that he guided the link into the drawbar, but it was injured after he had dropped it, perhaps, as he said on cross-examination, in the usual maimer of dropping it, and was injured by being caught while he was retiring from between the cars, and perhaps while rising at the time of retiring. Hut it is claimed by his counsel — -and practically it is found by the jury — that at the time he was disturbed and excited, and that he didn’t quite know what he was doing at the time, or that he did not act with the same care that he would if he had not been excited. We must all concede that the injury occurred to the hand after it had been dropped from the *651 drawbar, and I suppose, so far as the testimony is concerned, while he was rising.
We have discussed this matter a good deal, pro and con', and while it is a very close question, still, we think the testimony is such that the jury might draw a conclusion from the facts of the case favorable to the plantiff below, and might properly find that his injury resulted from the excitement that the was under at the time, caused by his discovery of the broken drawbar, and by his fear that there were other defects by which he was liable to be caught and injured. We think as a matter of law,that if the injury resulted from his excitement, and from his inability, by reason of that excitement, to use such care as he would if he had not been excited, then he is not chargeable with contributoiy negligence, and the company would be liable on account of its negligence. That is the whole case in a nut-shell, and we have come to the conclusion, upon the whole testimony, that we ought not to disturb the verdict.
There was a book of rules introduced in evidence in regard to the duties and obligation of this plaintiff below to look and examine the condition of this drawbar and these instru-. mentalities when he went in to make the coupling, or before he went in. There was evidence offered tending to show what the custom and habits of the employes were in regard to making such examinations; and evidence tending to show —not very strong, to be sure — -that it was known to the officers and agents of the company that these rules were not observed. And the court was asked to make certain charges. Certain charges were’given by the court, and certain charges were refused. These matters are too long to go through in detail; but we have, as a matter of fact, examined each of the requests, and examined the whole charge, and we think that the charge of the court was a fair and just statement of the law of the case. With the statement of the law made by the court we are. content to let the case remain. It is *652 very probable that if we were to charge the jury ourselves, we might have varied somewhat the language; but we think the substance of the law is contained in the body of the charge and the various requests that were given, and that there is no ground for complaint that should cause this court to interfere in regard to the questions that were raised upon the charge.
Swayne, Swayne, Hayes & Tyler, for plaintiff in error.
Geo. B. Boone, F. H. Hurd, for defendant in error.
It is said here that the damages were excessive, and upon that there was some little discussion; but we do not feel called upon to disturb the verdict for that reason.
We hold that there is not sufficient gorund for the interference of this court and the reversal of the judgment of the court of common pleas or the setting aside of the verdict. The judgment of the court of commmon pleas will therefore be affirmed, but reasonable cause for filing the petition in error will be certified.